SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB #965128**
Assistant United States Attorney
Scott.Kerin@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:24-CR-00242-SI-01 |
| v. | GOVERNMENT'S SENTENCING MEMORANDUM |
| MARK T. EAGER, | |
| Defendant. | |

The government asks the Court to impose a sentence of 135 months' imprisonment, to be followed by a five-year term of supervised release.

The defendant, a darknet vendor fentanyl dealer, was involved in selling an incredibly addictive, destructive, and deadly poison that has been devastating communities across the United States. The investigation began following an overdose death of one of his customers in Michigan who had ordered a free sample of "China White Synthetic Heroin" from the defendant, who was operating as the dark net vendor WRSEH10. Given the nature of the case, defendant's advisory sentencing guidelines, the societal harm caused by fentanyl, the scope of the

**Government's Sentencing Memorandum**                                                    **Page 1**

defendant's drug dealing activities, his criminal history, and the defendant's personal history and characteristics, the government believes the requested sentence is both reasonable and justified.

## A.    Summary of Proceedings.

On February 4, 2026, the defendant pled guilty to Count 1 of the Indictment which charged him with engaging in a Conspiracy to Distribute and Possess with Intent to Distribute Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  The maximum sentence the Court may impose is a term of life imprisonment, fine of $10,000,000, and at least five years of supervised release.  There is a potential mandatory minimum sentence of ten years' imprisonment.  The count of conviction carries a $100 fee assessment.

A Presentence Report (PSR) has been completed.  The government has no objection to the PSR and believes the facts underlying the defendant's count of conviction (PSR ¶¶ 22 - 33); Sentencing Guideline calculations (PSR ¶¶ 39 - 49); and, Criminal History (PSR ¶¶ 52 – 65) are accurately outlined in both the PSR and plea agreement.  In his plea agreement defendant admitted that:

> [H]e, along with his co-defendant, operated as the vendor known as WRSEH10 advertising and selling fentanyl, which they marketed as "China White Synthetic Heroin," on both Dark Net marketplaces and Telegram, an encrypted messenger application.  Operating as the vendor WRSEH10 the defendant conspired with others to distribute and possess with intent to distribute 400 grams or more of a mixture and substance containing fentanyl.  As part of this conspiracy the defendant would receive fentanyl from a source of supply which they would then sell and ship to customers across the United State, including three shipments of fentanyl that were sent to and arrived within the District of Oregon.
>
> On May 29, 2024, based on probable cause that defendant was selling fentanyl as the vendor WRSEH10, Investigators applied for and a U.S. Magistrate Judge in New Jersey granted two search warrants for

**Government's Sentencing Memorandum**                                    **Page 2**

residences associated to defendant.  Those warrants were executed in Kearny, New Jersey on June 11, 2024.

When the warrant was executed on defendant's residence, Investigators found him inside his bedroom.  Inside defendant's bedroom, Investigators also found and seized approximately 361 grams of powdered Fentanyl, 16 counterfeit M30 Pills, drug ledgers, cellular phones, two computers, and packaging consistent with what was delivered in the three deliveries mentioned above which were sent to Oregon.

Defendant was arrested and advised of his constitutional *Miranda* rights.  After acknowledging that he understood his rights, defendant was interviewed by Investigators.  Defendant admitted that he and his co-defendant operated as the vendor WRSEH10 on both the "SuperMarket" Dark Net marketplace site, as well as the Telegram shop.  Defendant also admitted that as a result of his online sales of fentanyl he had earned approximately $42,000 in cryptocurrency, which Investigators were able to locate and seize.  Defendant also admitted that he was using fentanyl as well.  Based upon the seizures during the warrant and Dark Net market records the defendant is responsible for engaging in a conspiracy that distributed and possessed with intent to distribute approximately 587 grams of fentanyl.  Fentanyl is a Schedule II controlled substance.

Plea Agreement ¶ 6.

As the PSR notes, the investigation of the defendant began in January 2024, after Homeland Security Investigation (HSI) agents reviewed posts on a dark net forum which discussed an individual who had obtained a sample of "China White Synthetic Heroin" from the defendant and then overdosed and died.  PSR ¶ 22.  In a November 2023, forum post the dark net vendor WRSEH10 advertised free samples of "China White Synthetic Heroin."  *Id.*

///

///

///

**Government's Sentencing Memorandum**                                                    **Page 3**



Week 3 - Free Samples - $0 Cost + $0 Shipping - China White Synthetic Heroin - Also *New Stamp Alert*

by /u/wrseh10 Vendor · 2 months ago in /d/Super

+*Please practice Harm Reduction - Strong Product*+
Pictures of Product -
https://dump.li/image/8652bb117515b7af.jpeg
https://dump.li/image/3c4e243c792200a2.jpeg
https://dump.li/image/c0f5e75ce562810b.jpeg

- Week 3 of the Free Samples. $0 Total cost. 50+ sent out. 9 Beautiful reviews. Read the reviews before asking questions, your answer may be there.

- *New Stamp Alert* We have been slipping some "Red (No Name) Stamps" into our orders for free. It will be the same product as the Purple stamps with minor formula tweaks, Same great strength. Expect the Red Stamps to be a menu item by next week.

- Not much to be said, I want the product to speak for itself. Thank you to the people who ordered a free sample. Thanks to the new customers that made their first purchases. Special thanks to MommaBear & SuperMarket for the opportunity to be a New Vendor.

14 comments   Report   Save   Crosspost   Give Award   Hide

EAGER_0000092.

The posting also contained links to three pictures of the product they were selling.





*Id.*

///

///

**Government's Sentencing Memorandum**                                    **Page 4**

On November 10, 2023, a separate user ("smoovdood") replied to this post stating: "do not buy this garbage, fent bullshit.  Buddy OD off the free sample.  DON'T DO IT."  *Id.*

The user had apparently obtained a free sample of "China White Synthetic Heroin" from WRSEH10 via a dark net market known as SuperMarket.  SuperMarket was a dark net marketplace where vendors sold  drugs, stolen data, and other illicit materials.  The defendant's SuperMarket vendor page is shown below:



Application for Search Warrant, March 27, 2024, Affidavit at 15, EAGER_0000043.[1]

In response to smoovdood's posting, another user "CaptainJack" responded:

> Ppl know it's fent.  That's why ppl want it.  I hate hearing someone OD, I hope and pray they're OK, but ... and I say this with the utmost respect, that's kinda on them for carelessly ordering something way out of their league, and then not following basic safety protocol of starting with the teeniest, tiniest amount and slowly increasing.  They shouldn't be ordering F if they don't have a tolerance to support it and aren't willing to follow universally accepted safety protocol.  Hopefully this experience will be a learning lesson for them so it doesn't happen again.

---

[1]    The EAGER_0000043 reference is to the Bates number of the discovery provided to the defendant in this case and which was also provided to the U.S. Probation Office to aid in the preparation of the PSR.

**Government's Sentencing Memorandum**                                                    **Page 5**

EAGER_0000093.

>Smoovdood replied:

>>FUCK I wish i couldve known that . . i dont do this shit or know about it...i understand that andfuckjkkkkkn agree with you. A lesson that took a life. God damnit.

*Id.*

On November 12, 2023, WRSEH10 responded:

>We just saw this right now on a late night check up on things.  We are supposed to be on light duty, but I feel the need to address this immediately.  I am writing you right after I read it so I have no time to digest this or think it over so here it goes.

>We would like to formally apologize to you & your friend.  We do not intend to hurt anyone at all.  I myself lost my best friend to similar circumstances.  We hope your friend is okay.  We know damn well there is not much we can say or do to change what happened.  We just wanted to formally apologize.

>This is a great opportunity to add on to what /u/ActionCaptainJack said & make a sort-of PSA here.  Harm Reduction has been our mantra since we started.  We are CW vendors by trade & the product is extremely strong & to be respected completely.  We put Harm Reduction sticky notes in all samples & orders for a few weeks now & that will continue.  Harm Reduction will continue to be plastered on our page, on our listings, on Dread, & in the package when you open it.  We use the CW name because that is what it goes by on here.  Please we are not here to hurt anyone, Harm Reduction, Harm Reduction, Harm Reduction.

>We became vendors to fill a gap in the market.  We noticed that the quality of the CW on all markets was straight trash.  We tried quite a few & each one was a complete waste of money.  I really wanna air a few out by name, but this is not the time or place.  We are here to service high tolerance users mostly.  If you do not have a tolerance please respect the product.  **We are sorry that you & your buddy missed all of the warnings.  We are sorry you didn't see all the F buzz words & recognize them**. We hope he is okay & making a full recovery.

>Please have a wonderful Veterans day weekend.  Always practice Harm Reduction & stay safe.

EAGER_0000094 (emphasis added).

The victim was not okay and he did not recover. HSI agents were eventually able to track down the victim referenced in the post. They found that on November 10, 2023, Michigan State police troopers responded to a fatal overdose that occurred in Traverse City, Michigan. PSR ¶ 23. The victim, an adult male, was determined to have died from the "combined toxic effects of methamphetamine, fluorofentanyl, and fentanyl." *Id.* As the PSR notes, the victim was the "buddy" referenced in the prior post and had ordered a free sample of China White from WRSEH10, and after consuming the fentanyl he died:

> The investigators discovered text messages between the victim and his friend where the victim communicated that he had ordered a sample of CW [China White] that arrived in the mail that day. He further stated he was planning to use the substance that night and advised his friend to call for help if he did not hear back from him. At the residence, investigators seized an envelope postmarked from New Jersey. The residence also contained methamphetamine, powder cocaine, and drug paraphernalia.

PSR ¶ 23.[2]

---

[2]    The government has reviewed the HSI reports associated with the overdose death and, while the death involved fentanyl, the listed cause of death was the **combined toxic effects** of methamphetamine, fluorofentanyl, and fentanyl. Here, the government could only show that the defendant was a source of fentanyl consumed by the victim. Thus, we were unable to establish that the fentanyl distributed by the defendant was either the "but-for" cause of death or an independently sufficient cause of death. *See Burrage v. United States*, 571 U.S. 204, 218-19 (2014); *see also*, Scott Kerin and Chris Myers, *Taking the Fear Out of Prosecuting Drug Overdose Cases,* DEPT. OF JUSTICE JOURNAL OF FEDERAL LAW AND PRACTICE, 51, 62 – 71, (March 2024) (discussion of the *Burrage* legal standard and collection of cases articulating the standard of proof required). Thus, while the fentanyl distributed by the defendant was a contributing factor in the death, both legally and factually, the government could not prove beyond a reasonable doubt that the defendant's distribution of fentanyl resulted in (caused) the victims' death. This tragic death does, however, identify the defendant as a drug distributor and highlights the terrible toll that fentanyl has taken on the community.

**Government's Sentencing Memorandum**                                    **Page 7**

As the investigation progressed, Investigators noted that in addition to providing the previously free samples, WRSEH10 was also advertised the sale of different quantities of "China White Synthetic Heroin" that was being sold in wax paper and stamped with the logos "GMA" or "Bosco."  The accompanying photographs displayed the white powdery substance as well as an example of the wax fold packaging with the logos.



EAGER_0000044 (from a SuperMarket posting).

///

///

///



EAGER_0000036 (from Telegram posting).[3]

On their SuperMarket site, WRSEH10 advertised "China White Synthetic Heroin" in the

following amounts:

**0.5 Grams for 80 00 USD**

**1 Gram for 150.00 USD**

**2 Grams for 255.00 USD**

**3.5 Grams for 385.00 USD**

**7 Grams for 675.00 USD**

EAGER_0000045-46.

///

///

///

---

[3]    The defendant was also distributing fentanyl, as "China White Synthetic Heroin," on the dark net markets Archetyp and Incognito Market, as well as on Telegram.

**Government's Sentencing Memorandum**                                                    **Page 9**

Below is a copy of WRSEH10's Telegram January 2024, advertisement which had two pictures of wax folds containing white powder displaying GMA stamps and price list for quantities offered:



EAGER_0000096.

To further the investigation, agents proceeded to conduct a series of controlled purchases of "China White Synthetic Heroin" from the vendor WRSEH10.  PSR ¶¶ 26 – 28.  The transactions were paid for in Bitcoin and the intent was to try and identify the individual(s) operating as WRSEH10 and find out where they were located.  PSR ¶ 26.  Pictures of the "China White Synthetic Heroin" being advertised in January 2024, by WRSEH10 on the SuperMarket site are below:



EAGER_0000109.

In January 2024, Investigators initially purchased 11 samples of "China White Synthetic Heroin" (one sample labeled "Bosco" and 10 samples labeled "GMA") from WRSEH10.  *Id.*  They eventually received a total of 10.3 gross grams of fentanyl.  *Id.*  The envelopes containing the samples was sent from New Jersey.  *Id.*

///

///

**Government's Sentencing Memorandum**                                    **Page 11**

Later in January 2024, Investigators purchased another 3.5 grams of the GMA packaged "China White Synthetic Heroin" from WRSEH10. PSR ¶ 27. They received another package that contained approximately 4.6 gross grams of fentanyl. *Id.*

In April 2024, Investigators ordered five grams of China White Synthetic Heroin from WRSEH10, which this time was packaged with the label "SRT." PSR ¶ 28. WRSEH10 advised that the order would be delayed due to the "high volume of pending shipments." *Id.* At the end of April, Investigators received an envelope containing five wax paper folds marked "SRT" that contained approximately 6.5 gross grams of fentanyl.

Through a variety of investigative means, Investigators were eventually able to identify the defendant and his co-defendant as jointly operating the WRSEH10 site and that they lived together at a residence in Kearney, New Jersey. In June 2024, the U.S. Attorney's Office in Oregon worked with the U.S. Attorney's Office in New Jersey to obtain search warrants for two locations associated with the defendants, one for a residence on Laurel Avenue and the other was for a residence on Quincy Avenue, in Kearney, New Jersey. The Laurel Avenue address was the residence Investigators identified as where the defendant was residing, taking orders, and packaging drugs for shipment, while the Quincy address was believed to be a location where an unknown runner would bring packages they picked up from the Laurel residence prior to them being shipped in the mail. EAGER_0000139-40.

On June 11, 2024, the federal warrants were executed and the defendants were taken into custody. In the defendants' bedroom at the Kearney, New Jersey residence, which was a residence they shared with the co-defendant's parents, Investigators found and seized approximately 361 grams of powdered Fentanyl, 16 counterfeit M30 Pills, drug ledgers, cellular

**Government's Sentencing Memorandum**                                                    **Page 12**

phones, two computers, and packaging consistent with what was delivered in the three deliveries mentioned above which were sent to Oregon. PSR ¶ 29, Plea Agreement ¶ 6. Picture of the seized drugs and drug packaging material are below:






Criminal Complaint ¶ 17.

The defendant was also interviewed and admitted co-operating the WRSEH10 site and that they had earned $41,000 in cryptocurrency from their online sales of fentanyl. PSR ¶ 30.

///

///

**Government's Sentencing Memorandum**                                    **Page 13**

Investigators were able to determine that the defendants conducted hundreds of sales.[4]  The total amount of fentanyl the defendants distributed and possessed with the intent to distribute was 587 grams.  PSR ¶ 33, Plea Agreement ¶

The defendant has been held in custody since his June 11, 2024, federal arrest.

**B.      Sentencing Guideline Calculations.**

The Court, "in determining the particular sentence to be imposed," is required to consider the "sentencing range established" by the U.S. Sentencing Guidelines.  18 U.S.C. § 3553(a)(4).  "The Guidelines are 'the starting point and the initial benchmark,'. . . and are to be kept in mind throughout the process."  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (quoting *Kimbrough v. United States*, 552 U.S. 85, 108 (2007)).  "All sentencing proceedings are to begin by determining the applicable Guideline range."  *Id*.

///

---

[4]      In an April 21, 2024, posting on the dark net market Archetyp, WRSEH10 posted this as well:

> Not only are we burnt tf out after 6 months straight of nonstop work, but we needed to shut down to implement major changes that proved impossible to make whilst open for business.
>
> We see this as a marathon, not a sprint. So for longevity sake we decided to take a vacation.  We were falling behind quite often & that causes us to rush around which just seems a bit unsafe.  So we decided to take a break to make sure everything runs smoothly.
>
> We just never planned to ship out #100+ orders per week. Anyway we hope to be back shortly. We have no time frame yet necessarily.  We did not even finish out our current orders.  So please give us a few more days to actually get on vacation. Then we will probably make some further announcements.

EAGER_0000135.

**Base Offense Level**

The parties agree that defendant's relevant conduct, pursuant to USSG §§ 1B1.3 and 2D1.1(a), involves between 400 grams and 1.2 kilograms of a mixture and substance containing fentanyl and results in an initial Base Offense Level of 30.  PSR ¶ 38, Plea Agreement ¶ 8.

**Mass Marketing**

As a vendor on the dark net and Telegram, because the defendant possessed distributed a controlled substance through mass-marketing by means of an interactive computer service, pursuant to USSG § 2D1.1(b)(6), the government and U.S. Probation Office believe that defendant's offense level should be increased by two-levels.  PSR ¶ 39, Plea Agreement ¶ 9.

**Maintaining Premises**

Pursuant to USSG §2D1.1(b)(12), the U.S. Probation Office has recommended a two-level upward adjustment because the defendant maintained premises for the purpose of manufacturing or distributing a controlled substance.  PSR ¶ 40.  Although not noted in the Plea Agreement, the government believes this adjustment applies.[5]  As the PSR notes:

> On June 11, 2024, agents executed a search warrant [at the Kearny, New Jersey residence] which resulted in the seizure of 361 gross grams of fentanyl, 16 counterfeit oxycodone M30 pills containing fentanyl, drug ledgers, wax folds stamped with the labels advertised on the WRSEH10 site, packaging materials, three phones, USPS tracking receipts, a computer, a hard drive, a laptop, a tablet, and other miscellaneous items. Based on the findings from the investigation and the results of the federal search warrant, it appears Eager and Melton ran their online business at their residence to conduct sales and package orders for drug distribution.

---

[5]    As the Plea Agreement notes, the "guideline calculations above are set forth as estimates only and the parties understand that the final guideline calculations and Criminal History Category will be determined by the Court following the receipt of a Presentence Report and these initial estimates are not binding upon the parties.  Plea Agreement ¶ 16.

**Government's Sentencing Memorandum**                                          **Page 15**

PSR¶ 40. *See also*, Plea Agreement ¶ 6.

When interviewed, the defendant admitted he operated the WRSEH10 site on both the SuperMarket dark net marketplace and Telegram and that his online sales of fentanyl earned them approximately $42,000 in cryptocurrency, which was then seized. PSR ¶ 30.

As the Ninth Circuit Court of Appeals has stated, the maintaining premises enhancement applies where a defendant uses a residence "as the central hub for his drug-trafficking business." *United States v. Tekola*, 169 F.4th 947, 953 (9th Cir. 2026). In *Tekola*, within his apartment the defendant "stored his drugs and other tools of the drug-dealing trade, [was] where he processed and recorded the drugs he sold, and [was] a default location where trusted customers picked up drugs." *Id*. at 952. Whether a defendant also uses the premises as a primary residence is irrelevant, so long as they "regularly used the premises both as a primary residence and for substantial drug trafficking activities." *Id*. at 951. Here, the defendant did so. The defendant stored the drugs they sold at the residence; he possessed the computers used to run their on-line drug business at the residence; he maintained their drug ledgers at the residence; he maintained cellular telephones at the residence; and, he had all the packaging materials they used to mail the drugs at the residence. The premises enhancement should apply.

### Misrepresentation

Because the defendant knowingly misrepresented or knowingly marketed as another substance a mixture and substance containing fentanyl, pursuant to USSG § 2D1.1(b)(13), the government and U.S. Probation Office believe that defendant's offense level should be increased

**Government's Sentencing Memorandum**                                              **Page 16**

by four-levels.  PSR¶ 41, Plea Agreement ¶ 10.  On-line the defendant advertised the sale of "China White Synthetic Heroin."  The "China White Synthetic Heroin" was in fact fentanyl.  While many people may know or equate "China White Synthetic Heroin" with fentanyl, his advertisements did not truthfully call it fentanyl, when it was fentanyl.  In adding the Misrepresentation enhancement, the Sentencing Commission did so because of the high potency and risks associated with fentanyl.  They noted:

> Because of fentanyl's extreme potency, the risk of overdose death is great, particularly when the user is inexperienced or unaware of what substance he or she is using.  To address this harm, the amendment adds a new specific offense characteristic at §2D1.1(b)(13) to provide for a 4-level increase whenever the defendant knowingly misrepresented or knowingly marketed as another substance a mixture or substance containing fentanyl or a fentanyl analogue.  The Commission determined that it is appropriate for traffickers who knowingly misrepresent fentanyl or a fentanyl analogue as another substance to receive additional punishment.  If an offender does not know the substance contains fentanyl or a fentanyl analogue, the enhancement does not apply.  The specific offense characteristic includes a *mens rea* requirement to ensure that only the most culpable offenders are subjected to these increased penalties.

USSG App. C – Vol. IV, Amend. 807, at 175 (2025).

The Sentencing Commission did not require customers to be versed in drug terminology or to catch the fentanyl "buzz words" that a vendor may be using.  They did not require customers to go on-line and search terms to see what else "China White Synthetic Heroin" may refer to or even what version of fentanyl it may refer to.[6]  Nine hundred and ninety nine people

---

[6]     For example, Amarillo College, in their substance abuse policy, uses the terms "China White" and "synthetic heroin" in very broadly to refer to a large class of designer drugs:

> The so-called 'designer' drugs, or analogs, are drugs whose molecular structures have been altered.  **There are analogs of narcotics, amphetamines, and PCP; these go by such names as** "**China White**,"

may know that "China White Synthetic Heroin" is often used to refer to fentanyl, but as long as one potential customer does not know that that – such as the individual identified as

> "**synthetic heroin**," and "ecstasy," which is known to cause brain damage.  Designer drugs, produced primarily by underground chemists/drug pushers, tend to be extremely potent, and their effects are mostly unpredictable.

https://www.actx.edu/hr/substance-abuse-policy (emphasis added).

In The New Indian Express, an article referred to "China White synthetic heroin," as a "new kind of heroin."

> Recently, Ernakulam Excise Intelligence wing nabbed two persons from Assam who were peddling **China White synthetic heroin**. In the interrogation, the accused confessed that they have a handful of customers for the rare drug. They told Excise officials that peddlers travel to Assam and bring the drug by train. "**It is a kind of heroin that is new here.** The persons we arrested told us that they procured it from Assam where it is easily available. We suspect that the contraband is smuggled into India from Bangladesh and Myanmar and has hit rave parties organised in the city.

Toby Anthony, THE NEW INDIAN EXPRESS, June 12, 2023 (https://www.newindianexpress.com/kochi/2023/Jun/13/rising-synthetic-drugs-cases-putenforcement-agencies-on-their-toes-in-kerala-2584458.html) (emphasis added).

On-line a drug treatment facility notes that:

> China White is a slang term that was once used to refer to very pure forms of heroin.  Today, many people say China White is fentanyl or a fentanyl derivative called alpha-methylfentanyl.

Drugrehab.com (May 20, 2026) (https://www.drugrehab.com/addiction/drugs/heroin/china-white/).
Some vendors would simply use the term "China White Synthetic Heroin" to circumvent bans some dark net marketplaces implemented on the sale of items described as fentanyl.  Nathaniel Popper, *Hansa Market, a Dark Web Marketplace, Bans the Sale of Fentanyl,* NEW YORK TIMES, July 18, 2017 (https://www.nytimes.com/2017/07/18/business/dealbook/hansa-market-a-dark-web-marketplace-bans-the-sale-of-fentanyl.html)

**Government's Sentencing Memorandum**                                              **Page 18**

"smoovdood" as noted above – then there is a misrepresentation.[7]  The enhancement simply applies if a defendant "knowingly misrepresented or knowingly marketed as another substance a mixture or substance containing fentanyl . . . or a fentanyl analogue."  USSG 2D1.1(b)(13).  If the defendant was selling fentanyl and marketed by any other name, whatever it is, the enhancement should apply.

### Acceptance

Based upon defendant's guilty plea and acceptance of responsibility, pursuant to USSG § 3E1.1, the parties ask that the Court grant the defendant a three-level reduction in his offense level.  PSR ¶¶ 47 - 48, Plea Agreement ¶ 12.

Prior to any additional departures or variances, the defendant's initial Adjusted Offense Level is 35.  With a Criminal History Category of III, defendant's initial advisory sentencing guideline range is 210 to 262 months' imprisonment.

Pursuant to 18 U.S.C. § 3553(a), based upon the nature of the offense, the history and characteristics of the defendant, defendant's indication at an early stage in the proceedings about his desire to resolve his case, defendant's willingness to forgo any pretrial litigation, how similarly situated defendants have been handled by the USAO and the courts, and to achieve a

---

[7]     Certainly, not everyone knew the "China White Synthetic Heroin" the defendant was selling was deadly fentanyl.  As part of the conversation, as noted above, about his friend who overdosed and died, "smoovdood" replied:

> FUCK I wish i couldve known that . . i dont do this shit or know about it...i understand that andfuckjkkkkkn agree with you.  A lesson that took a life.  God damnit.

EAGER_0000093.

**Government's Sentencing Memorandum**                                                    **Page 19**

fair and just resolution of the case, the government will recommend that the Court grant the defendant a two-level downward variance in his overall offense level.  Plea Agreement ¶ 15. The U.S. Probation Office has concurred in the request for a variance.  PSR Sentencing Recommendation at *1.

The two-level 3553(a) variance would result in an Adjusted Offense Level of 33 and with a Criminal History Category of III, and advisory sentencing guideline range of 168 to 210 months' imprisonment.

## C.      Government's Recommended Sentence.

Pursuant to 18 U.S.C. § 3553(a) and the materials submitted to the Court, we ask the Court to impose a sentence of 135 months' imprisonment, to be followed by a five-year term of supervised release.

The defendant was selling fentanyl, an extremely addictive, destructive, and deadly poison that has been devastating not only Oregon, but the entire country.  According to law enforcement:

> Fentanyl and methamphetamine remain the primary drug threats, affecting community livability and contributing to drug-related overdose deaths and criminal activity, including crimes against persons and property in the HIDTA region.  In 2023, fentanyl was linked to 75.9% of overdose deaths in Oregon and 51% in Idaho.  Methamphetamine was present in 63.5% of Oregon's overdose deaths and 38% of Idaho's.  Together, these two substances accounted for 41.3% of overdose fatalities in both states.

OREGON-IDAHO HIGH INTENSITY DRUG TRAFFICKING AREA (HIDTA) 2026 THREAT ASSESSMENT, 2025, at 5 (https://oridhidta.org/reports).

The death toll from fentanyl is truly frightening.  For Americans aged 18 to 45, overdoses – primarily the result of illicit fentanyl – remain the leading cause of death.  *CDC Reports Nearly*

*24% Decline in U.S. Drug Overdose Deaths*, CDC NEWSROOM (Feb. 25, 2025); *DEA Administrator on Record Fentanyl Overdose Deaths,* GET SMART ABOUT DRUGS (August 17, 2024). In 2022, within the United States, fentanyl was responsible for an average of more than 200 deaths every day and a total of 73,654 people died from fentanyl overdoses. *Are Fentanyl Overdose Deaths Rising in the U.S.*, USAFACTS (Sept. 27, 2023). Here in Oregon, between 2015 and 2021, Oregon experienced a 932% increase in fentanyl overdose deaths. *Fentanyl by State Report*, FAMILIES AGAINST FENTANYL (Feb. 4, 2023). In 2022, Oregon alone experienced a total of 839 fentanyl related overdose deaths. OREGON HEALTH AUTHORITY OREGON DEPARTMENT OF EDUCATION FENTANYL & OPIOID RESPONSE TOOLKIT FOR SCHOOLS (January 2024). In 2023, within Oregon there were 1,833 overdose deaths, and of those 1,272 were the result of synthetic opioids, such as illicit fentanyl. *Oregon Overdose Prevention Dashboard*, OREGON HEALTH AUTHORITY (May 1, 2025). In 2023, "Oregon had the highest rate of increase in fentanyl deaths in the nation with a one-year increase of more than 67[%], compared to a national average of 5[%]." *Oregon, Washington see largest increases in fentanyl deaths since last year*, KPTV 12 (Sept. 26, 2023).

Even with the most recent decreases in overdose deaths, both nationally and in Oregon, "[f]entanyl continues to be the primary cause of drug overdose deaths in the United States," to include here within Oregon. *Fentanyl Continues to Be the Leading Cause of Overdose Deaths. What's Being Done to Combat Trafficking into the United States?,* WATCHBLOG: FOLLOWING THE FEDERAL DOLLAR, U.S. GOVERNMENT ACCOUNTABILITY OFFICE (Sept. 4, 2025); *Oregon overdose deaths are down, CDC data shows,* OREGON HEALTH AUTHORITY (May 16, 2025) (While "Oregon's overdose deaths decreased 22% between December 2023 and December 2024,

**Government's Sentencing Memorandum**                                      **Page 21**

a trend similar to that experienced nationwide . . . The count is still much higher than pre-pandemic years, with 1,480 deaths within that one-year time span, CDC data show."); *U.S. Overdose Deaths Decrease Almost 27% in 2024,* NATIONAL CENTER FOR HEALTH STATISTICS, U.S. CENTERS FOR DISEASE CONTROL AND PREVENTION (CDC) (May 14, 2025)( https://www.cdc.gov/nchs/pressroom/ releases/20250514) (in 2024 "there were there were an estimated 80,391 drug overdose deaths in the United States – a decrease of 26.9% from the 110,037 deaths estimated in 2023" and of those deaths, in  2023, 76,282 involved synthetic opioids (fentanyl) and in 2024, 48,422 involved synthetic opioids (fentanyl)).

Fentanyl kills.  Even in very small amounts fentanyl is a deadly poison and this defendant distributed that poison hundreds of times to people all across the country – all for the sole purpose of making money and without any regard for the harm he was causing others.  To put the amount of fentanyl the defendant sold into context, a user of powdered fentanyl will use much less than a gram at a time and will typically burn it on a piece of foil and inhale the smoke. Two milligrams is a potentially lethal dose of fentanyl for an average adult.  *Fentanyl: What You Should Know*, Health Beat, Northwestern Medicine (January 2025).  The 587 grams of fentanyl the defendant is responsible for is 587,000 milligrams, or 293,500 potentially fatal doses. Furthermore, despite knowing of the dangers of fentanyl, he kept selling it.  Not only was the defendant told that a customer of his overdosed, he himself admitted that he also "lost my best friend to similar circumstances."  But it did not slow him up, it did not deter him.  He simply did not care about the havoc he was contributing to as long as he was making money.

Furthermore, the defendant comes before the Court with a criminal history that includes multiple convictions for drug use, as well as credit card theft, and engaging in a conspiracy to

**Government's Sentencing Memorandum**                                                        **Page 22**

commit robbery.  The conspiracy to commit robbery is especially alarming as it involved the defendant and his co-defendants going to the victim's house to purchase drugs and then binding the victim with zip ties while the group stole money and drugs from the house, all while armed with handguns and an expandable baton.  PSR ¶ 62.

The defendant was not the largest fentanyl dealer on the dark net, but he did sell a significant amount of an extremely addictive, destructive, and deadly drug – a drug he knew from personal experience could kill people.  Nevertheless, he continued to sell it.  Accordingly, after evaluating the competing sentencing factors outlined in 18 U.S.C. § 3553(a) which include the nature and circumstances of the offense; the defendant's characteristics; the need for the sentence imposed to reflect the seriousness of the offense; the need for the sentence to promote respect for the law; the need for the sentence to afford adequate deterrence to criminal conduct; the need for the sentence to provide just punishment for the offense; the need to protect the public from further crimes of the defendant; and, the need to provide the defendant with needed training or other corrective treatment, we believe a sentence of 135 months' imprisonment is reasonable.  We ask the Court to impose it, to be followed by a five-year term of supervised release.

We also recommend that the defendant participate in the Bureau of Prison's Residential Drug and Alcohol Program (RDAP) and that an updated drug evaluation and any needed drug treatment be a condition of his supervision.

///

///

///

**Government's Sentencing Memorandum**                                                    **Page 23**

At the time of sentencing we ask the Court to dismiss Counts 2, 3, and 4.

There is an appeal waiver.

Dated: May 21, 2026.                          Respectfully submitted,

                                              SCOTT E. BRADFORD
                                              United States Attorney


                                              /s/ *Scott Kerin*
                                              _____

                                              SCOTT M. KERIN, OSB # 965128
                                              Assistant United States Attorney